Filed
File Date: 1/16/2023 7:05 PM
Grafton Superior Court
E-Filed Document

STATE OF NEW HAMPSHIRE

GRAFTON COUNTY                                          SUPERIOR COURT
                                                       215-2023-CV-00016

Kathryn Moura Dos Santos
(fka Kathryn B. Anderson)
1330 VT Route 122
Lyndon Center, VT 05850

v.

Dartmouth-Hitchcock Medical Center
One Medical Center Drive
Lebanon, NH 03756

And

Mary Hitchcock Memorial Hospital
Once Medical Center Drive
Lebanon, NH 03756

And

Dartmouth-Hitchcock Health
One Medical Center Drive
Lebanon, NH 03756

**COMPLAINT AND REQUEST FOR JURY TRIAL**

NOW COMES Kathryn Moura Dos Santos, formerly known as Kathryn B. Anderson,

Plaintiff, by and through her attorney, Leslie H. Johnson, Esq., of the Law Office of Leslie H.

Johnson, PLLC, and complains against Defendants Dartmouth-Hitchcock Medical Center; Mary

Hitchcock Memorial Hospital; and Dartmouth-Hitchcock Health, and in support thereof states as

follows:

**INTRODUCTION**

**PLAINTIFF REQUESTS A TRIAL BY JURY**

1.     Plaintiff Kathryn Moura Dos Santos, formerly known as Kathryn Bruno Anderson

(hereinafter referred to as "Ms. Moura Dos Santos" or "Plaintiff") brings this action against

True Copy Attest

1

This is a Service Document For Case: 215-2023-CV-00016
Grafton Superior Court
2/21/2023 11:26 AM

Viktoriya A. Kovalenko, Clerk of Court
February 21, 2023

Dartmouth-Hitchcock Medical Center, Mary Hitchcock Memorial Hospital, and Dartmouth-Hitchcock Health, who are joint employers, pursuant to the statutory and common laws of the State of New Hampshire and the United States, particularly RSA 354-A, and the Americans with Disabilities Act (ADA), 42 USC §12101, et seq., as amended, including the ADA Amendments Act of 2008, Pub. L. No. 110-325, 122 Stat. 3553 ("ADAAA" or "amended Act")(collectively referred to as the "ADA").  Plaintiff seeks to recover all damages as allowed by law, and all equitable relief to which she may be entitled.

2.    Plaintiff files her claims for discrimination, harassment/hostile environment, retaliation and termination all based on disability and/or perceived disability, which is contrary to the aforesaid statutory schemes.  Plaintiff claims she was retaliated against for requesting to be allowed to work within her work restrictions, in work that was available, and for reporting Mr. Hickey for harassment.

**PARTIES**

3.    Ms. Moura Dos Santos is a resident of Lydon Center, Vermont, with an address of 1330 VT Route 122, Lyndon Center, VT 05850, and was employed by Defendants from on or about March 12, 2018 as a Licensed Nursing Assistant (LNA).  Plaintiff is a person with disabilities, a record of disabilities, and/or regarded as having disabilities by Defendants.

4.    Defendant Dartmouth-Hitchcock Medical Center, ("DHMC" or collectively with other Defendants as "Defendants"), is a NH nonprofit corporation with its principal place of business at One Medical Center Drive, Lebanon, NH 03756. The current officer/directors of DHMC are the following, all with an address of One Medical Center Drive, Lebanon, NH 03756: Philip J. Hanlon, PhD, Director; Duane A. Compton, PhD, Director; Joanne Conroy, MD, Director; Brett Rusch, MD, Director; and Tina Naimie, Treasurer.

2

5.      Defendant Mary Hitchcock Memorial Hospital ("MHMC" or collectively with other Defendants as "Defendants"), is a NH nonprofit corporation with its principal place of business at One Medical Center Drive, Lebanon, NH 03756. The current officer/directors of MHMC are the following, all with an address of One Medical Center Drive, Lebanon, NH 03756: Edward H. Stanfield, III, Chairman of the Board of Directors; Joanne Conroy, MD, President; and Charles G. Plimpton, Secretary.

6.      Defendant Dartmouth-Hitchcock Health ("DHH" or collectively with other Defendants as "Defendants"), is a NH nonprofit corporation with its principal place of business at One Medical Center Drive, Lebanon, NH 03756. The current officer/directors of DHH are the following, all with an address of One Medical Center Drive, Lebanon, NH 03756: Edward H. Stanfield, III, Chairman of the Board of Directors; Joanne Conroy, MD, President; and Charles G. Plimpton, Secretary.

7.      Defendants are responsible for all actions of its employees, named or unnamed herein, including those employees of related entities, who at all times were acting within the scope of their employment, under the theories of *respondeat superior* and vicarious liability. Defendants are also responsible for their own actions and those of their related entities, and their failures to act.

8.      Defendants are employers and covered entities for purposes of RSA 354-A and the ADA.

## VENUE AND JURISDICTION

9.      Venue and jurisdiction are proper as Defendants are located in Lebanon, Grafton County, New Hampshire, and the unlawful employment acts complained of were committed in Lebanon, Grafton County, New Hampshire. Also, although Plaintiff lived primarily in Vermont,

she worked for Defendants in NH and selects the jurisdiction and venue of NH where she worked.

10.     Plaintiff filed a timely Charge of Discrimination with the New Hampshire Commission for Human Rights ("NHCHR"), Case #ED(H)(R) 0042-21 / 16D-2021-00054, on or about November 19, 2020.  The Charge was withdrawn from the NHCHR and a Notice of Right to Sue was issued by the EEOC on November 22, 2022. This Complaint is filed within 90 days of receipt of the Notice of Right to Sue.

## STATEMENT OF FACTS

11.     On or about approximately March 10, 2019 Plaintiff, an LNA, was transferred from working in the psych inpatient unit to SSO (Systems Staffing Office) and worked on what is called "Flex Choice" a per diem arrangement, whereby she would tell Defendants what days she could work and Defendants would place her for work within their network.  Plaintiff normally worked 7:00 pm to 7:00 am four days per week.

12.     The SSO is basically a place where employees can select the days and hours they will work.  Assignments are then determined by SSO scheduling. One can often schedule as far out as a year, due to staffing shortages, work was almost guaranteed, even when an employee has work restrictions.  This meant that Plaintiff could work in almost any of Defendants' hospitals, so finding work would be no problem. In fact, about 75% of the time Plaintiff worked in SSO she was primarily just sitting with patients, which was well within her restrictions.

13.     In August 2019, Plaintiff had to leave work due to a migraine which ultimately necessitated her going by ambulance to the Wentworth-Douglass Emergency Department and being kept overnight for observation.  For the following few days she was unable to communicate to her employer due to the migraine.

14.     On or about September 2019, Plaintiff applied for and was approved for intermittent FMLA leave for which she would call in, or text, when experiencing a migraine. The symptoms from her migraines sometimes mimicked a stroke, making it difficult to impossible to understand her, and would leave her with left sided blindness, vomiting, and other issues.

15.     On or about October 4, 2019, Plaintiff's medical care provider revised the FMLA stating it was anticipated she would have one migraine episode per month that would necessitate her being out of work.  Plaintiff does not know why her physician revised the FMLA submission.

16.     Upon Plaintiff receiving a copy of the October FMLA paperwork, she contacted her provider stating her migraines occurred as often as several times per week.  Her medical care provider made the change, and Plaintiff believes she submitted the revision to Defendants.

17.     On or about October 8, 2019 Plaintiff injured her back at work while assisting patients on the cardiac floor.  Although she felt something happen in her low back, she continued to work through the pain.  However, by approximately 5:00 am she could no longer handle the increasing pain and informed her supervisor she had hurt her back and needed to leave for the day.  Plaintiff then reported to the emergency department downstairs at DHMC.

18.     Plaintiff was examined in the emergency department and diagnosed with a possible back sprain with disc involvement radiating down her right leg, which initially took her out of work for four days.

19.     On or about October 12, 2019, Plaintiff returned to work light duty with a 15-pound lifting restriction, no bending, squatting, pushing or pulling, or transfers, and to have frequent changes in position.  Later, some other physical restrictions were instituted. Plaintiff

informed SSO that she could not reasonably go back to that cardiac unit due to her physical restrictions, which SSO honored for a time.

20.     Plaintiff continued to have pain down one leg, knee, and into her foot, which she reported to Occupational Medicine, her medical care provider within DHMC at the time, and they revised her restrictions to no more than 2 days in a row of work without a day off.

21.     Plaintiff worked with these restrictions for approximately five weeks and thought she was feeling better and therefore asked her medical provider if her days could be increased to 3 days per week, which Occupational Medicine agreed to.

22.     On or about November 25, 27 and 30, 2020, Plaintiff was out of work due to a severe migraine, which was covered by her approved FMLA.

23.     Although there were plenty of places SSO could have placed Plaintiff, on or about January 15, 2020, SSO assigned her to the cardiac unit that she had previously informed SSO and her physical therapist was too heavy for her to handle, and exceeded her restrictions from Occupational Medicine.

24.     By January 21, 2020, Mr. Hickey was aware Plaintiff had accepted a position with OB/Gyn which was within her restrictions and was starting soon, and that she intended to stay in a minor, more infrequent, capacity with SSO.

25.     On or about January 21, 2020, SSO again assigned Plaintiff to the cardiac unit despite the fact Defendants knew the unit was too heavy for her to handle and outside her restrictions.  She worked from 7:00 pm to approximately 11:45 pm, when, as a result of the work, her back was in so much pain it felt like it was on fire.  She asked the unit nurse if she had been told about her restrictions, and the unit nurse stated she had not.  Even so, Plaintiff pushed

through the pain and finished her shift at approximately 7:00 am.  During her shift, Plaintiff was assigned to assist 16 patients, which meant 5+ hours of standing without a break.

26.     At approximately 8:00 am on January 22, 2020, Plaintiff went to her scheduled 8:00 am appointment with M. Dube, APRN at DHMC Occupational Medicine (hereinafter "Nurse Dube") and told Nurse Dube that she could not do the 16-patient shift, that it was causing her intense pain (an 8 out of 10), and she could barely walk because of it.  Nurse Dube replied, "that's between you and your supervisor", which Plaintiff knew was not true as her medical care provider could give her a note stating she could not do the work and that it was outside her work restrictions. She went on to tell Nurse Dube that she did not know if she was going to be able to work her shift that night.

27.     On January 22, 2020, after treating with Nurse Dube, Plaintiff went home and was unable to get comfortable due to pain so, being uncomfortable continuing to treat medically at her employer due to the inherent and then obvious conflict of interest, she went to the emergency department at Northeastern Vermont Regional Hospital in St. Johnsbury, VT, which put her out of work for five days.

28.     On January 22, 2020, Plaintiff emailed Mr. Hickey per Nurse Dube's instruction to take matters up with her supervisor, that she would not be in as scheduled, that she had been to the emergency room and would be out of work for five days.  Mr. Hickey retaliated by email, informing Plaintiff that if she emailed him with information of that nature again he would file a disciplinary action against her. Plaintiff clarified she was only doing what she was instructed to do per Nurse Dube, that is to take it up with her supervisor.

29.     On or about January 27, 2020, the first day Plaintiff was released to return to work, she was again assigned to the same cardiac unit from 11:00 pm to 7:00 am, starting with

16 patients and increasing to 18 patients by 3:00 am.  Mr. Hickey and Nurse Dube had been made aware this was too heavy of an assignment due to her injury.  Plaintiff believes she was again assigned to this unit as a form of harassment.  The supervising nurse on the cardiac unit appeared unaware of Plaintiff's restrictions, and the supervising nurse wrote a letter to Mr. Hickey stating that Plaintiff should not return to their unit until she is 100% because the unit is too heavy for someone with light-duty restrictions.

30.    On or about January 28, 2020, Plaintiff emailed, and later spoke with, V. Clouse, Employee Relations at DHMC, with regard to a grievance against Mr. Hickey for issuing her a written warning that she believed was done as a form of harassment.  It was clear that the written warning included several absences which Mr. Hickey knew were part of Plaintiff's FMLA accommodation, and yet he included them within the warning anyway.  In addition, Mr. Hickey, although telling Plaintiff he would alert the units she was being assigned to of her light-duty work restrictions, apparently failed to alert any of them, causing Plaintiff to work outside her work restrictions and suffer increased pain and risk of aggravating her injury.

31.    In late January/early February 2020, Plaintiff stopped treating with Occupational Medicine, as it was clear Nurse Dube was not taking her best interests into consideration, but was biased towards Defendants in determining and advising her on her work restrictions/duties.

32.    On February 5, 2020, Plaintiff found a new primary care physician at York Hospital Physician Practices in York, ME, and began treating with V. Ivanova, NP (hereinafter "Nurse Ivanova").  On February 5, 2020, Nurse Ivanova placed Plaintiff out of work for the next 3 days with the understanding Plaintiff was then going on vacation; and on Plaintiff's follow-up appointment of February 10, 2020, Nurse Ivanova extended her out of work note through February 21, 2020.

33.     On or about February 6, 2020, Mr. Hickey issued Plaintiff a final written warning due to alleged ongoing attendance issues.  Mr. Hickey knew his January 2020 written warning was still in the process of being grieved and investigated, and that he had been instructed by HR Clouse not to take any further action.

34.     On or about February 6, 2020, Plaintiff met with S. Woods, Sr. Employee Relations Advisor, to discuss Mr. Hickey's harassment and shared text messages and emails. Mr. Woods allegedly did an investigation in which he found there was no evidence Mr. Hickey had harassed Plaintiff.

35.     On or about March 9, 2020, Plaintiff was supposed to start a job in an OB/Gyn clinic of Defendants that would be within her work restrictions and which she was excited to start.  However, in order to have clearance for the position, certain medical information had to be provided no later than March 6 at 4:00 p.m.

36.     On March 3, 2020 Nurse Ivanova wrote new restrictions for Plaintiff's anticipated OB/Gyn position.  This included only working 8 hours per day, no heavy lifting or sudden movements, with the ability to take 5-minute breaks every 2 hours if needed.

37.     On or about March 4, 2020, Plaintiff emailed S. Hastings, indicating that it was her intent to resign from SSO, but that she was waiting to transfer to the OB/Gyn clinic first. Ms. Hastings told Plaintiff that she (Plaintiff) would have to handle the resignation with SSO herself, which Plaintiff did not do, thereby not resigning from the SSO position.

38.     On or about March 4, 2020, Plaintiff called Gloria in Occupational Medicine regarding the paperwork necessary for her transfer to the OB/Gyn position. Gloria informed Plaintiff she would not be providing the information directly to her and that Plaintiff would need to contact S. Hastings.  That same day Plaintiff left a message on Ms. Hastings' phone and

emailed her stating that although Occupational Medicine had the paperwork, it would not

provide the paperwork to her, but rather Plaintiff would have to get the paperwork from Ms.

Hastings.  On March 5, 2020, Ms. Hastings emailed Plaintiff confirming she "just reached out"

to Occupational Medicine and they re-sent the paperwork.

      39.     On or about March 5, 2020, Michelle, LPN at Occupational Medicine advised

Plaintiff that the paperwork from Nurse Ivanova was not sufficient and that revised paperwork

had to be submitted before March 6, 2020 at 4:00 pm.   There is no reason why Nurse Ivanova,

Plaintiff's treating provider paperwork was not accepted, and it was not in fact "insufficient".

      40.     Even though Plaintiff had returned her portion of the revised paperwork back to

Occupational Medicine by 2:00 pm on March 6, Occupational Medicine failed to fax the revised

paperwork to Nurse Ivanova to complete on March 6, not forwarding it to Nurse Ivanova until

4:45 pm on March 9, 2020, already past the deadline date.  In addition, although Nurse Ivanova

worked on March 6, she did not work on March 9 and therefore the paperwork could not be

returned to Occupational Medicine until after March 9, which caused Plaintiff to be unable to

meet the deadline for the OB/Gyn position.

      41.     On March 6, 2020, Mr. Hickey emailed Plaintiff a resignation form as well as a

final performance review.  Upon receipt of this email, Plaintiff emailed Mr. Hickey clarifying

that she was taking on a new position with Defendants and that she was going to resign from her

SSO position effective March 9, 2020, the date she would be transferred to her new position with

Defendants.  She was not terminating her employment with Defendants.

      42.     Plaintiff had emailed S. Hastings to confirm a start date of March 9, 2020, and

Ms. Hastings responded that she did not have clearance from Occupational Medicine, which

should not have been required.  Ms. Hastings also informed Plaintiff that the next LNA on-

boarding would not be until March 23, 2020, which meant Defendants were treating Plaintiff as if she was a new employee instead of a transfer.  The "new" onboarding should not have been required of Plaintiff who was an existing staff member.

43.    On or about March 12, 2020, Mr. Woods sent Plaintiff a letter stating she was (purportedly) on workers' compensation leave, and that she had resigned her position in SSO effective March 4, 2020, which were not true.  Plaintiff did not believe she had gone on "workers' compensation leave" as she was trying to start work at the OB/Gyn office.  Plaintiff had only needed a reasonable accommodation, consisting of being given SSO assignments, of which there were plenty, within her restrictions.

44.     On or about March 16, 2020, Plaintiff informed Mr. Woods that she had been told by Nurse Vera's office that Dr. Adamo at Occupational Medicine would not permit her to work until after an IME was performed.

45.    On or about March 19, 2020, Mr. Woods sent a letter to Plaintiff stating her claim was "on leave status", which was the first time Plaintiff had been informed of this.  Mr. Kurtiak, Senior Employee Relations Advisor, followed up via email regarding Plaintiff's concerns on this status, and on March 26, 2020 stated, "You are on a worker's compensation leave of absence." Mr. Kurtiak stated the leave started on February 2, 2020 "the date of the first shift not worked due to a work related injury."  However, Defendants did not commence workers' compensation benefits for this forced, alleged workers' compensation leave.

46.    On or about March 20, 2020, Mr. Woods replied to Plaintiff, that K. Aframe had reviewed and determined that Defendants had a reasonable basis to accept and act upon her alleged resignation effective March 4.  He further stated that Defendants placed her in an "on leave" status due to the open status of her workers' compensation claim.  He further stated, "you

11

cannot return to work at DH unless and until occupational medicine clears you to work" and until she had a workers' compensation independent medical examination according to DH Occupational Medicine. This was very unusual as workers' compensation really had nothing to do with granting a reasonable accommodation.

47.    On March 26, 2020, Plaintiff received an email from Mr. Kurtiak confirming her leave of absence was workers' compensation leave and that it began on February 2, 2020, allegedly the first shift she did not work due to her work injury. It further stated Plaintiff was still considered an employee of Defendants, but that she was not cleared to work. It also confirmed Plaintiff had accepted a position with Defendants' OB Clinic but had to comply with pre-placement Occupational Medicine assessment.

48.    Plaintiff contacted employee relations because she was not getting clear information from Defendants and did not know what was going on with her status.  Defendants failed to adequately enter into the interactive process with Plaintiff.

49.    Plaintiff was told by Mr. Woods, and later by Defendants, they would not allow her to return to work until she was cleared by Occupational Medicine, who was no longer her treating provider. Then she was told that she had to have an independent medical examination before she would be allowed to return to work. However, Plaintiff had already provided Defendants with a March 3, 2020 work release by Nurse Ivanova that she could perform the duties required at the OB/Gyn clinic.

50.    It is Plaintiff's understanding that ultimately Dr. Adamo from Occupational Medicine contacted Nurse Ivanova, and whatever he said to Nurse Vera caused her to decline to continue treating Plaintiff from that point forward. Thus Defendants interfered with Plaintiff's medical treatment.

51.     From on or about April 2-7, 2020, Plaintiff communicated with V. Clouse, regarding a final written warning due to alleged absences and tardiness.   Defendants started an investigation into Plaintiff absences, claiming they were unexcused, and made her feel like she should not take time off for migraines even though they incapacitated her Plaintiff pointed out that some were related to her workers' compensation injury, and others should not be counted for other reasons.

52.     Plaintiff had been cited for absences which were a single occurrence as opposed to multiple, because she observed a 24 hour no fever policy and FMLA covered absences, changing the number from 14 to 8.

53.      The absence for a workers' compensation injury was maintained even after her grievance.   Furthermore, as Defendants had purportedly put her on a forced workers' compensation leave, they should not have been taking any disciplinary employment actions against her.

54.     On July 6, 2020, counsel for Plaintiff wrote to Attorney Catsos, a lawyer representing Defendants in the workers' compensation case for her back injury, and requested that she be allowed to return to work in her original SSO position by August 1, and stated that she had never heard of an employer placing an employee on a "workers' compensation leave", involuntarily, and contrary to her release for work.

55.     On or about August 3, 2020, counsel for Defendants, Catsos, denied the request for reinstatement, instead stating that Plaintiff still had to have an IME for her workers' compensation injury.

56.     Requirement of an IME, which is usually for workers' compensation purposes, is very unusual as a condition for employment, and should not be required when an employee has a release to return to work, at least not for the purpose of letting the employee return to work.

57.      Plaintiff has not worked for Defendants since January 28, 2020, because Defendants required clearance by their own Occupational Medicine, where she was no longer a patient, and because they were requiring a workers' compensation IME, which is not required under the ADA.

58.     Plaintiff believes she was discriminated against and harassed based on her disability and perceived disability, and that she was retaliated against for requesting Defendants to allow her to work within her work restrictions, in work that was available, and for reporting Mr. Hickey for harassment as described herein.

59.     The hostile work environment was severe and/or pervasive such that a reasonable person would have found same to be offensive, and would not have been able to endure same, and Plaintiff found the conditions to be so.  However, Plaintiff still desired to work in the OB/Gyn position for which she had been hired, with intermittent SSO assignments as appropriate.

60.     The discrimination and retaliation Defendants directed toward Plaintiff has caused her damages, including but not limited to, liberal/enhanced compensatory damages, punitive damages, lost wages and benefits (past and future), damages for emotional distress, embarrassment, humiliation, aggravation, anxiety, stress, loss of sleep, loss of reputation, attorney fees and costs, all pre-judgment and post-judgment interest, and an amount to compensate for any negative tax consequences that result from any judgment of decision.

Plaintiff requests all damages as allowed by law, as well as all equitable relief to which she may be entitled.

61.    Defendants knew, or should have known, that their actions described herein were illegal.  Defendants' actions were done with reckless disregard and/or were grossly negligent; were done contrary to the law and done knowingly, maliciously, with reckless indifference to Plaintiff's protected rights, and were extreme and/or outrageous, egregious and wanton, thus justifying an award of enhanced/liberal compensatory damages and/or punitive damages.

**COUNT I**
**DISABILITY DISCRIMINATION INCLUDING**
**HARASSMENT/ HOSTILE WORK ENVIRONMENT AND TERMINATION**
**NH RSA 354-A, et seq.**
**THE AMERICANS WITH DISABILITIES ACT, AS AMENDED (ADAAA)**

62.    Plaintiff incorporates herein each and every allegation elsewhere in the Complaint as if fully set forth herein, and further states as follows:

63.    Plaintiff is a person with disabilities and a record thereof, and was regarded as having disabilities, including but not limited to diagnoses of ongoing severe migraine headaches and later with a back injury suffered at work, both of which Defendants were well aware.

64.    Plaintiff's conditions and underlying health issues, constitute disabilities within the meaning of the ADA/ADAAA and NH RSA 354-A. These conditions, singly or in combination, at times affected Plaintiff's ability to walk, bend, lift, think and to function, which constitute major life activities.

65..    In spite of said disabilities, Plaintiff could perform the SSO job with reasonable accommodations, and could have performed the OB/Gyn job with or without reasonable accommodations.

66.     Plaintiff asserts that the treatment she received, as described herein, including but not limited to increasing her job duties beyond her work restrictions, assigning her to a Unit Defendants knew she could not do which ultimately caused her further injury, claiming she had resigned from the SSO position when she had not, disciplining her for missing time from work much of which had been an approved leave (FMLA, or a forced "workers' compensation leave"), failing to enter into the interactive process, trying to force her to have a workers' compensation IME to determine her work restrictions or impact the ADA reasonable accommodation process, refusing to accept her medical providers noted restrictions, interfering with her medical treatment, refusing to allow her to return to work, and terminating her, was all discriminatory based on disabilities, as described herein.

67.     Said discrimination all created a hostile work environment due to her disabilities.

68.     The disability discrimination, harassment and termination as described herein, was contrary to the law, namely NH RSA 354-A, et seq., and the ADA, as amended. ADAAA.

69.     Plaintiff claims said discrimination caused her damages as set forth elsewhere herein, and she claims all damages as allowed by law.

70.     Plaintiff also claims all equitable relief to which she is entitled, including but not limited to reinstatement, and additional training on discrimination and retaliation for staff, supervisors, and human resources of Defendants.

**COUNT II**
**DISABILITY DISCRIMINATION/ FAILURE TO ACCOMMODATE,**
**INCLUDING TERMINATION**
**NH RSA 354-A, et seq.**
**THE AMERICANS WITH DISABILITIES ACT, AS AMENDED (ADAAA)**

71.     Plaintiff incorporates herein each and every allegation elsewhere in the Complaint as if fully set forth herein, and further states as follows:

72.     Plaintiff's conditions and underlying health issues, constitute disabilities within the meaning of the ADA/ADAAA and NH RSA 354-A, for which Plaintiff was entitled to reasonable accommodations.

73.     While Plaintiff continued to perform her job well, Defendants made it more difficult by requiring her to work in a Unit they knew was outside her work restrictions, thereby causing her further injury and pain in her back.  They also failed to provide her with reasonable accommodations as to her migraines.

74.     Defendants failed to enter into a meaningful interactive process with Plaintiff, refused to assign her the multitude of jobs which would have met her physical restrictions, falsely claimed she had resigned from SSO, failed to allow her to start the job she had been hired for in OB/Gyn which was within her restrictions, and required clearance by a medical provider who was no longer her provider, and interfered with her medical treatment with Nurse Ivanova.

75.     Defendants' failure to reasonably accommodate her included terminating her.

76.     As there were ample jobs available to meet Plaintiff's restrictions, the OB/Gyn job even without any reasonable accommodation, it was no undue hardship to Defendants to accommodate Plaintiff, to the extent it was necessary from time to time.

77.     The disability discrimination, failure to accommodate Plaintiff and enter into a meaningful interactive process, as described herein, was contrary to the law, namely NH RSA 354-A, et seq., and the ADA, as amended. ADAAA.

78.     Plaintiff claims said discrimination caused her damages as set forth elsewhere herein, and she claims all damages as allowed by law.

79.     Plaintiff also claims all equitable relief to which she is entitled, including but not limited to reinstatement, and additional training on discrimination and retaliation for staff, supervisors, and human resources of Defendants.

**COUNT III**
**RETALIATION, INCLUDING TERMINATION**
**NH RSA 354-A, et seq.**
**THE AMERICANS WITH DISABILITIES ACT, AS AMENDED (ADAAA)**

80.     Plaintiff incorporates herein each and every allegation raised elsewhere in the Complaint as if fully set forth herein and further states as follows:

81.     Defendants retaliated against Plaintiff for exercising her rights under RSA 354-A, specifically for communicating about her disabilities/medical conditions and their effect on her, and taking time off for them, which time was available to Plaintiff given she was a per diem employee.

82.     The retaliation is described above and includes, but is not limited to, harassment, placing her in a Unit they knew was outside her work restrictions, including duties that were not part of his job description, counting days she could not work due to suffering from a migraine as an unexcused absence, placing her on leave of absence when she provided a medical release from her treating provider, requiring her to be cleared by Defendants' related medical provider, falsely claiming she resigned, not allowing her to return to work to the OB/Gyn position she had been hired for, and ultimately terminating her, all of which are contrary to the ADA/ADAAA and NH RSA 354-A.

83.     Plaintiff claims said retaliation caused her damages as set forth elsewhere herein, and she claims all damages as allowed by law.

84..    Plaintiff also claims all equitable relief to which she is entitled, including but not limited to reinstatement, and additional training on discrimination and retaliation for staff, supervisors, and human resources of Defendants.

## COUNT IV
## WRONGFUL DISCHARGE

85.    Plaintiff incorporates herein each and every allegation raised elsewhere in the Complaint as if fully set forth herein and further states as follows:

86.    Plaintiff took FMLA leave and was entitled to additional leave outside of the FMLA protected period for doctor appointments, including emergency department visits.

87.    Plaintiff filed her workers' compensation claim for her back injury, and attempted to be reasonably accommodated as necessary for her disability.

88.    Plaintiff pursuing of the FMLA, workers' compensation and disability claims are all actions supported by public policies.

89.    Defendants terminated Plaintiff for her actions as described above in pursuing these claims, and in exercising various rights to other leave time, including choosing not to work in the SSO on certain days as it was a per diem position.

90.    Defendants' termination of Plaintiff constitutes a wrongful discharge.

91.    Plaintiff claims said wrongful discharge has caused her damages as set forth elsewhere herein, and she claims all damages as allowed by law.

92.    Plaintiff also claims all equitable relief to which she is entitled, as described elsewhere herein.

WHEREFORE, Plaintiff, Kathryn Moura Dos Santos, prays this Honorable Court, and as appropriate a jury, award and/or order the following relief:

A.      Back wages, together with lost fringe benefits and any other benefits, which Ms. Moura Dos Santos would have earned;

B.      Future wages, fringe benefits, and other lost benefits;

C.      Enhanced/liberal compensatory damages;

D.      Punitive damages;

E.      Reasonable attorney fees, interest and costs;

F.      An amount to be awarded by the Court to make up for any adverse tax consequences due to any judgment or award;

G.      All damages which are available under the above-cited laws;

H.      All available pre-judgment and post-judgment interest;

I.      Reinstatement;

J.      All equitable relief to which Plaintiff is entitled, including but not limited to training in discrimination and harassment for staff, supervisors, and HR; and

K.      Such other and further relief as is just and equitable.


                                        Respectfully submitted,
                                        **KATHRYN MOURA DOS SANTOS, Plaintiff**
                                        By her attorney

Dated: January 16, 2023                        /s/  Leslie H. Johnson
                                        Leslie H. Johnson, Esquire - #5545
                                        LAW OFFICE OF LESLIE H. JOHNSON, PLLC
                                        PO Box 265
                                        Center Sandwich, NH 03227
                                        603.284.6600
                                        leslie@lesliejohnsonlaw.com

# THE STATE OF NEW HAMPSHIRE

## JUDICIAL BRANCH

SUPERIOR COURT



Grafton Superior Court
3785 Dartmouth College Highway
North Haverhill NH  03774

Telephone: 1-855-212-1234
TTY/TDD Relay: (800) 735-2964
http://www.courts.state.nh.us

## SUMMONS IN A CIVIL ACTION

Case Name:     **Kathryn Moura Dos Santos v Dartmouth-Hitchcock Medical Center, et al**
Case Number:   **215-2023-CV-00016**

Date Complaint Filed: January 16, 2023

A Complaint has been filed against Dartmouth-Hitchcock Health; Dartmouth-Hitchcock Medical Center; Mary Hitchcock Memorial Hospital in this Court. A copy of the Complaint is attached.

**The Court ORDERS that ON OR BEFORE:**

| | |
|---|---|
| March 06, 2023 | Kathryn Moura Dos Santos shall have this Summons and the attached Complaint served upon Dartmouth-Hitchcock Health; Dartmouth-Hitchcock Medical Center; Mary Hitchcock Memorial Hospital by in hand or by leaving a copy at his/her abode, or by such other service as is allowed by law. |
| March 27, 2023 | Kathryn Moura Dos Santos shall electronically file the return(s) of service with this Court. Failure to do so may result in this action being dismissed without further notice. |
| 30 days after Defendant is served | Dartmouth-Hitchcock Health; Dartmouth-Hitchcock Medical Center; Mary Hitchcock Memorial Hospital must electronically file an Appearance and Answer or other responsive pleading form with this Court.  A copy of the Appearance and Answer or other responsive pleading must be sent electronically to the party/parties listed below. |

**Notice to Dartmouth-Hitchcock Health; Dartmouth-Hitchcock Medical Center; Mary Hitchcock Memorial Hospital:** If you do not comply with these requirements you will be considered in default and the Court may issue orders that affect you without your input.

Send copies to:

| | |
|---|---|
| Leslie Hughes Johnson, ESQ | Law Office of Leslie H Johnson PLLC 46 Holderness Road PO Box 265 Center Sandwich NH  03227 |
| Dartmouth-Hitchcock Medical Center | One Medical Center Drive Lebanon NH  03756 |
| Mary Hitchcock Memorial Hospital | One Medical Center Drive Lebanon NH  03756 |
| Dartmouth-Hitchcock Health | One Medical Center Drive Lebanon NH  03756 |

BY ORDER OF THE COURT

True Copy Attest

January 20, 2023

Viktoriya A. Kovalenko
Clerk of Court

(1082)

NHJB-2678-Se (07/01/2018)

Viktoriya A. Kovalenko, Clerk of Court
February 21, 2023

This is a Service Document For Case: 215-2023-CV-00016
Grafton Superior Court
2/21/2023 11:26 AM

# THE STATE OF NEW HAMPSHIRE
## JUDICIAL BRANCH
### SUPERIOR COURT

Grafton Superior Court
3785 Dartmouth College Highway
North Haverhill NH  03774

Telephone: 1-855-212-1234
TTY/TDD Relay: (800) 735-2964
http://www.courts.state.nh.us

## KATHRYN MOURA DOS SANTOS
## INSTRUCTIONS FOR SERVICE
## BY THE SHERIFF'S DEPARTMENT

Case Name:     **Kathryn Moura Dos Santos v Dartmouth-Hitchcock Medical Center, et al**
Case Number:   **215-2023-CV-00016**

**Instructions for:** **Kathryn Moura Dos Santos**

The attached Summons must be sent to the Sheriff's Department for service.  Service must be completed on or before **March 06, 2023**.
**Further action is required by you**
**You must:**
- **Print two copies of the Summons per defendant**
- **Print two copies of the Notice to Defendant per defendant**
- **Print two copies of the Complaint filed with the Court per defendant**
- **Make two packets for service.  Each packet should contain:**
  - **One Summons**
  - **Once Notice for Defendant**
  - **One Complaint filed with the Court**
- **Mail or hand deliver the packets to the Sheriff's Department in the county where each defendant resides.**

**Sheriff Departments in New Hampshire:**

Belknap County Sheriff's Department:
Carroll County Sheriff's Department:
Cheshire County Sheriff's Department:
Coos County Sheriff's Department:
Grafton County Sheriff's Department:

Hillsborough County Sheriff's Department:
Merrimack County Sheriff's Department:
Rockingham County Sheriff's Department:
Strafford County Sheriff's Department:
Sullivan County Sheriff's Department:

**\*If one or more of the parties resides out of state, please click here for the requirements\***
Service must be made upon the defendant before **March 06, 2023**.

If the Sheriff is unable to complete service by **March 06, 2023** you will receive a "Notice of Incomplete Service" from the Sheriff's Department.  You may request that new paperwork be issued by electronically filing a Request for Documents.  There is a fee for this request.

The Sheriff will mail the 'Return of Service' to you.  You MUST electronically file the 'Return of Service' with the court by March 27, 2023.

**If service is not made as directed, no further action will occur and the case may be dismissed by the court.**

NHJB-2678-Se (07/01/2018)

# Important Service Information for Sheriff

## <u>Do not file this with the court</u>
Provide this information to the Sheriff's Department.
See Instructions for Service for more information.
### PLEASE PRINT CLEARLY

Date: _____          Case #: _____

### <u>Who are you requesting to be served?</u>
Please provide whatever information you know

Name: _____

Address for service (no P.O. boxes):

_____          APT #: _____

_____

Home phone #: _____          Cell phone #: _____

Sex: ☐ Male   ☐ Female          Race: _____

Last 4 digits of SS#: xxx-xx-  _____  _____  _____  _____          D.O.B. _____

Work name & address:

_____

Special instructions for service (i.e. directions, best time to serve, cautions, etc.):

_____

_____

Vehicle description/license plate:

_____

### <u>Your Information:</u>
Name (please print): _____

Residential address:                    Mailing address:

_____          _____

_____          _____

Phone number to contact you during business hours:

_____ Alternate #: _____

_____
Signature

### ♦IN-HAND SERVICE WILL INCUR EXTRA COSTS DUE TO ADDITIONAL TRAVEL♦

### SHERIFF OFFICE USE ONLY: (This will vary by Sheriff's Office)

Fees Paid: $_____ Cash #: _____ Check#: _____
Id#: _____ Waiver: _____ Money Order#: _____ Credit Card: _____
Sheriff File # _____ Authorization #: _____

NHJB-2678-Se (07/01/2018)

Instructions for filing the Return of Service:

If you are working with an attorney, they will guide you on the next steps.  If you are going to represent yourself in this action, go to the court's website: www.courts.state.nh.us, select the Electronic Services icon and then select the option for a self-represented party.

1. Select "I am filing into an existing case".  Enter 215-2023-CV-00016 and click Next.

2. When you find the case, click on the link follow the instructions on the screen.  On the "What would you like to file?" screen, select "File Other Document" and choose "Return of Service".

3.  Scan the Return of Service packet and follow the instructions in the electronic filing program to upload the Return of Service to complete your filing.

4. If the sheriff was unable to serve the paperwork, you can request new paperwork by filing a Request for Documents.  On the "What would you like to file?" screen, select "File Other Document" and choose "Request for Reissued Summons" from the menu and upload the Request for Documents form.


**FAILURE TO FILE THESE DOCUMENTS MAY RESULT IN YOUR CASE BEING DISMISSED.**


January 20, 2023                              Viktoriya A. Kovalenko
Date                                          Clerk of Court

You can access documents electronically filed through our Case Access Portal by going to https://odypa.nhecourt.us/portal and following the instructions in the User Guide.  In that process you will register, validate your email, request access and approval to view your case.  After your information is validated by the court, you will be able to view case information and documents filed in your case.

# THE STATE OF NEW HAMPSHIRE
## JUDICIAL BRANCH
### SUPERIOR COURT

Grafton Superior Court
3785 Dartmouth College Highway
North Haverhill NH  03774

Telephone: 1-855-212-1234
TTY/TDD Relay: (800) 735-2964
http://www.courts.state.nh.us

## NOTICE TO DEFENDANT

Case Name:  **Kathryn Moura Dos Santos v Dartmouth-Hitchcock Medical Center, et al**
Case Number:  **215-2023-CV-00016**

You have been served with a Complaint which serves as notice that this legal action has been filed against you in the **Grafton Superior Court.**  Review the Complaint to see the basis for the Plaintiff's claim.

Each Defendant is required to electronically file an Appearance and Answer 30 days after service. You may register and respond on any private or public computer.  For your convenience, there is also a computer available in the courthouse lobby.

If you are working with an attorney, they will guide you on the next steps.  If you are going to represent yourself in this action, go to the court's website: www.courts.state.nh.us, select the Electronic Services icon and then select the option for a self-represented party.

1. Complete the registration/log in process.  Click Register and follow the prompts.

2. After you register, click Start Now.  Select **Grafton Superior Court** as the location.

3. Select "I am filing into an existing case".  Enter **215-2023-CV-00016** and click Next.

4. When you find the case, click on the link and follow the instructions on the screen.  On the "What would you like to file?" screen, select "File a Response to Civil Complaint".  Follow the instructions to complete your filing.

5. Review your Response before submitting it to the court.

**IMPORTANT:** After receiving your response and other filings the court will send notifications and court orders electronically to the email address you provide.

A person who is filing or defending against a Civil Complaint will want to be familiar with the Rules of the Superior Court, which are available on the court's website: www.courts.state.nh.us.

Once you have registered and responded to the summons, you can access documents electronically filed by going to https://odypa.nhecourt.us/portal and following the instructions in the User Guide.  In that process you will register, validate your email, request access and approval to view your case. After your information is validated by the court, you will be able to view case information and documents filed in your case.

If you have questions regarding this process, please contact the court at 1-855-212-1234.

Filed
File Date: 2/15/2023 4:18 PM
Grafton Superior Court
E-Filed Document

# THE STATE OF NEW HAMPSHIRE
## JUDICIAL BRANCH
### http://www.courts.state.nh.us

Court Name: _____

Case Name: _____

Case Number: _____
(if known)

## ACCEPTANCE OF SERVICE

**Acceptance of Service:** (Select One)

☐ Counsel for the following defendant(s):

_____
(Name)                    (Address)                    (Telephone Number)

_____
(Name)                    (Address)                    (Telephone Number)

_____
(Name)                    (Address)                    (Telephone Number)

☐ I will be representing myself (self-represented party),

and waive(s) all formalities of service, accept(s) service of the Summons issued by the Court in this case and enter(s) the following appearance:

**Type of Appearance:** (Select One)

☐ Appearance          ☐ Limited Appearance

If limited appearance, describe scope of representation:

_____

_____

_____

_____

_____

_____

_____

True Copy Attest

Viktoriya A. Kovalenko, Clerk of Court

February 21, 2023



This is a Service Document For Case: 215-2023-CV-00016
Grafton Superior Court
2/21/2023 11:26 AM

**Case Name:** _____

**Case Number:** _____

<u>**ACCEPTANCE OF SERVICE**</u>

---

*For non e-filed cases:*

I state that on this date I am ☐ mailing by U.S. mail, or ☐ Email (only when there is a prior agreement of the parties to use this method), or ☐ hand delivering a copy of this document to:

_____  or  _____
Other party                                                    Other party's attorney

---

**OR**

---

*For e-filed cases:*

☐  I state that on this date I am sending a copy of this document as required by the rules of the court.  I am electronically sending this document through the court's electronic filing system to all attorneys and to all other parties who have entered electronic service contacts (email addresses) in this case.  I am mailing or hand-delivering copies to all other interested parties.

---

_____
Name of Filer

_____
Law Firm, if applicable          Bar ID # of attorney

_____
Address

_____
City                    State          Zip code

_____
Signature of Filer                              Date

_____
Telephone

_____
E-mail

Filed
File Date: 2/16/2023 4:36 PM
Grafton Superior Court
E-Filed Document

STATE OF NEW HAMPSHIRE

GRAFTON, SS.                                                    SUPERIOR COURT

215-2023-cv-00016

Kathryn Moura Dos Santos
(f/k/a Kathryn B. Anderson)

v.

Dartmouth-Hitchcock Medical Center,
Mary Hitchcock Memorial Hospital, and
Dartmouth-Hitchcock Health

---

## NOTICE OF FILING OF NOTICE OF REMOVAL

---

PLEASE TAKE NOTICE that Dartmouth-Hitchcock Medical Center, Mary Hitchcock

Memorial Hospital, and Dartmouth-Hitchcock Health, defendants in the above-captioned matter,

filed a Notice of Removal on February 16, 2023, in the United States District Court for the

District of New Hampshire.  A copy of the Notice of Removal is attached to this Notice and

served herewith.

Respectfully submitted,

DARTMOUTH-HITCHCOCK MEDICAL
CENTER, MARY HITCHCOCK MEMORIAL
HOSPITAL, and DARTMOUTH-HITCHCOCK
HEALTH

By Their Attorneys,
SULLOWAY & HOLLIS, P.L.L.C.

DATED:  February 16, 2023            By:_____/s/ William D. Pandolph, Esq._____
                                         William D. Pandolph, Esq. #5579
                                         9 Capitol Street
                                         Concord, NH 03301
                                         (603) 223-2862
                                         e-mail:  wpandolph@sulloway.com

Law Offices of
Sulloway & Hollis, PLLC
Concord, N.H. 03301

{C2508621.1 }

True Copy Attest



Viktoriya A. Kovalenko, Clerk of Court
February 21, 2023

## **CERTIFICATE OF SERVICE**

  I hereby certify that I state that on February 16, 2023 I am sending a copy of this document as required by the rules of the court.  I am electronically sending this document through the Court's electronic filing system to all attorneys and to all other parties who have entered electronic service contacts (email addresses) in this case.  I am mailing or hand delivering copies to all other interested parties.


DATED:  February 16, 2023      By:_____/s/ William D. Pandolph, Esq._____
                    William D. Pandolph, Esq.

Law Offices of
Sulloway & Hollis, P.L.L.C.
Concord, N.H. 03301

{C2508621.1 }                    -2-

UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF NEW HAMPSHIRE

| | | |
|---|---|---|
| Kathryn Moura Dos Santos (f/k/a Kathryn B. Anderson), | § § | |
| *Plaintiff*, | § § | |
| | § | Civil Action No. _____ |
| v. | § § | |
| Dartmouth-Hitchcock Medical Center, Mary Hitchcock Memorial Hospital, and Dartmouth-Hitchcock Health, | § § § | |
| *Defendants*. | § | |

---

## NOTICE OF REMOVAL

---

Pursuant to 28 U.S.C. §§ 1441 and 1446, defendants Dartmouth-Hitchcock Medical Center, Mary Hitchcock Memorial Hospital, and Dartmouth-Hitchcock Health (collectively "defendants"), file this Notice of Removal of an action pending in the Grafton County (New Hampshire) Superior Court (hereinafter "State Court"), and in support hereof state as follows:

1.      Defendants are defendants in a civil action brought by plaintiff Kathryn Moura Dos Santos (f/k/a Kathryn B. Anderson) (Case No. 215-2023-cv-00016) in the State Court. Therein, plaintiff asserts claims against defendants for disability discrimination under the Americans with Disabilities Act ("ADA") and NH RSA 354-A (Counts I, II and II); and a wrongful discharge claim under New Hampshire common law (Count IV).

2.      Copies of all "process, pleadings and orders" received by defendants are attached hereto as Exhibit A.

3.      The Court has original jurisdiction over this action under 28 U.S.C. § 1331 because, as noted, plaintiff asserts that defendants violated the ADA, which is a federal statute. Thus, plaintiff's action arises under the laws of the United States.

4.      Removal of this civil action to the United States District Court for the District of New Hampshire is proper pursuant to 28 U.S.C. § 1441(a) because this is the district "embracing the place where [the State Court] action is pending."

5.      Defendants desire to remove this action to this Court and submit this Notice of Removal in accordance with 28 U.S.C. §§ 1441 and 1446.

6.      This Notice of Removal is timely in that counsel for defendants received a courtesy copy of the Complaint on January 23, 2023, and accepted service on behalf of defendants on February 15, 2023.  Thus, by any measure, this Notice of Removal is filed within 30 days of defendants' "receipt" of plaintiff's Complaint.

7.      Defendants shall promptly provide written notice of the filing of this Notice of Removal to plaintiff and promptly file a copy of this Notice of Removal with the Clerk of the State Court, as provided by 28 U.S.C. 1446(d).

8.      Pursuant to Local Rule 81.1(c), defendants shall request from the Clerk of the State Court true copies of all records and proceedings in the State Court and shall file the same.

Respectfully submitted,

DARTMOUTH-HITCHCOCK MEDICAL CENTER, MARY HITCHCOCK MEMORIAL HOSPITAL, and DARTMOUTH-HITCHCOCK HEALTH

By Their Attorneys,
SULLOWAY & HOLLIS, P.L.L.C.

DATED:  February 16, 2023          By:___/s/ William D. Pandolph, Esq._____
                                       William D. Pandolph, Esq. #5579
                                       9 Capitol Street
                                       Concord, NH 03301
                                       (603) 223-2862
                                       e-mail:  wpandolph@sulloway.com

Law Offices of
Sulloway & Hollis, P.L.L.C.
Concord, N.H. 03301

{C2508567.1 }

-2-

## CERTIFICATE OF SERVICE

I hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF).


DATED:  February 16, 2023                    By:   /s/ William D. Pandolph, Esq.
                                                   William D. Pandolph, Esq.

Law Offices of
Sulloway & Hollis, P.L.L.C.
Concord, N.H. 03301

{C2508567.1 }